**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Frank Hetzel, et al., | No. CV-23-00218-PHX-ROS |
| Plaintiffs, | **ORDER** |
| v. | |
| County of Pinal, et al., | |
| Defendants. | |

This dispute arises out of Defendants' alleged unconstitutional acts and gross negligence in connection with the burning of Plaintiffs' home, located on unincorporated land in Pinal County, in the wee hours of April 19, 2022. Frank and Marilesa Hetzel, a married couple, and Michael Coulston, their neighbor (collectively "Plaintiffs"), filed suit for monetary relief against Pinal County ("County"), the Pinal County Board of Supervisors ("PCBOS"), the Pinal County Attorney's Office ("PCAO"), Pinal County Attorney Kent Volkmer ("CA Volkmer"), the Pinal County Sheriff's Office ("PCSO"), Pinal County Sheriff Mark Lamb ("Sheriff Lamb"), unknown Pinal County 911 dispatch employees, and unknown PCSO deputies (collectively "Defendants"). Defendants filed a motion for summary judgment on all claims. (Doc. 62, "Mot."). Plaintiffs responded (Doc. 65, "Resp."), and Defendants replied (Doc. 70, "Reply"). For the reasons set forth below, the Court will grant summary judgment on all grounds.

## BACKGROUND

All facts set forth below are undisputed or not subject to reasonable dispute based

on the parties' proffered evidence unless otherwise noted. Both Plaintiffs and Defendants filed separate statements of fact in support of their positions. (*See* Doc. 63, "DSOF"; Doc. 66, "PSOF").[1]

Pinal County is roughly the size of Connecticut. As such, several fire departments operate within it. However, fire protection is not readily available in unincorporated areas of the County, including parts of an area known as Cactus Forest in South Florence. The lack of fire protection is a known fact among homeowners in the unincorporated areas, as new residents sign home insurance documents acknowledging a lack of fire protection. The only entity that will respond to fires in the County's unincorporated areas is the Arizona Department of Fire and Forestry, which generally responds in 24 hours—well after significant ruin has occurred.

In 2020, after moving to the Cactus Forest area, non-party Larry Vincent learned that there was no fire service to the area. After reaching out to the Town of Florence Fire Department, Vincent connected with a local realtor who managed a 182-person text group of local neighbors who would "bring buckets, shovels and water wagons and attempt to do whatever possible" whenever there was a fire emergency. Vincent subsequently formed a volunteer nonprofit firefighting group called the South Florence Volunteer Fire Department ("SFVFD"). SFVFD initially comprised of four firefighters, including Vincent. Vincent purchased a used fire engine—despite neither he nor any of the other volunteer firefighters having ever operated one before—along with a dozen mismatched pieces of uniform. The group received six hours of training on the use of the engine from the fire department that sold it to Vincent, and over time, the group learned more from various entities that assisted them. Vincent later acquired two additional vehicles and some additional equipment. Although the group size fluctuated, the core SFVFD firefighting group eventually grew to approximately ten people.

---

[1] Of significance, Plaintiffs fail to address Defendants' factual statements in the PSOF. This contravenes Fed. R. Civ. P. 56(c) and LRCiv. 56.1(b), which requires non-movants to address, paragraph by paragraph, each paragraph of the of the moving parties' separate statement of facts. Fed. R. Civ. P. 56(e)(2) permits courts to consider unaddressed facts as undisputed for purposes of the motion. The Court will thus deem unaddressed facts as undisputed unless indicated otherwise by contrary statements in the PSOF.

In February 2021, after SFVFD responded to a fire it learned about via text, Vincent and another SFVFD volunteer met with PCSO 911 Administrative Manager Robert Woodhull and other PCSO employees to discuss SFVFD's firefighting activities. During that meeting, SFVFD was informed of the possibility of accessing the regional radio channels. On February 16, 2021, Sheriff Lamb on behalf of the Pinal Regional Communications Consortium ("PRCC"), signed a Letter of Concurrence ("LOC") with SFVFD. PRCC is an interagency entity which maintains the public safety communications system. It decides whether a group can have access to confidential police communications that transmit on the County's radio system. The LOC set forth that SFVFD was allowed "to have PRCC radio channels/talkgroups programmed on their radios for the use of permitted interagency radio communications." SFVFD agreed to "[o]nly operate (transmit) when authorized to do, or per agreed upon operational procedures." PRCC and SFVFD mutually agreed that LOC could be canceled by either party at any time, upon 30 days' written notice to the other party.

Separate from the LOC, Woodhull advised PCSO dispatchers to contact SFVFD when fires occurred in its area, and an internal notification system was created outlining the role PCSO dispatch would have in notifying SFVFD of fires in the area south of Florence. PCSO's internal procedures stated that 911 dispatchers "may call SFVFD" when fires occurred in the area south of Florence, but did not mandate that SFVFD be called. Regardless of whether courtesy calls were made to SFVFD, the procedure required dispatchers to search for other fire departments in the area to notify the departments of a fire. According to Vincent, SFVFD did not interpret the LOC or any other document to imply that PCSO was required to notify it of fires in the area. And County employees, including Woodhull and Sheriff Lamb, did not independently promise to permanently provide SFVFD with courtesy calls or provide 30-days' notice before rescinding the non-binding decision to provide such calls.

Per the terms of the internal procedure, SFVFD did receive courtesy calls reporting of fires occurring in the area. From February 2021 to January 2022, SFVFD responded to

four calls from PCSO dispatch. In late 2021, Lt. Ross Teeple of PCSO became aware of concerns relating to SFVFD. He was informed of two reports involving SFVFD that prompted him to seek clarification of SFVFD's status. The first involved an individual who allegedly self-identified as an SFVFD member, and trespassed on a citizen's property, asking to see the citizen's burn permit. The second involved a complaint about SFVFD volunteers parking their vehicles on a citizen's landscaping while responding to a fire at the citizen's neighbor's house. Lt. Teeple questioned whether SFVFD constituted a fire department and had authority to go onto someone's property to fight a fire.

On February 3, 2022, concerned about individual property rights and the legality of SFVFD's conduct, Lt. Teeple wrote to Deputy County Attorney ("DCA") Jim Heard, the law enforcement liaison, to get clarification. In his email, noting SFVFD was not a fire district or a government entity, Lt. Teeple described the two incidents and sought direction since he had been unable to locate any Arizona statute which protected an individual who was trespassing on another's property simply because they self-identified as a firefighter. Lt. Teeple learned SFVFD did not have an Intergovernmental Agreement ("IGA") with the County to allow SFVFD to receive service notifications. The only relevant documents in existence were: (1) the LOC—which authorized SFVFD to use the public safety radio frequencies but did not mandate that PCSO dispatch or notify SFVFD of any fire; and (2) PCSO's in-house notification procedures. Notably, every other entity that received calls from 911 dispatch had a Memorandum of Agreement ("MOU") or IGA with the County, which SFVFD conspicuously lacked.

After DCA Heard learned, *inter alia*, that SFVFD did not have a letter of Agreement with the State Fire Marshall or State Department of Forestry and Fire Management to provide fire services; was not affiliated with the Town of Florence Fire Department; was operating as a private company; likely lacked formal firefighting training; and had no fire protection authority outside the boundaries of its own property, he concluded SFVFD did not appear to "have any authority to make anybody do anything." Based on liability concerns, the reported complaints, and the belief that SFVFD did not have necessary

training and lacked any certification, the recommendation was made by PCAO to stop notifying SFVFD of fires through dispatch. Sheriff Lamb then "made a decision to terminate the courtesy calls" to SFVFD based on legal counsel's advice and the available information, including (1) his belief that fire personnel would undergo some level of training and certification, (2) liability concerns, (3) his belief that SFVFD did not have a state identification number with the Arizona State Fire Marshall, which only enabled SFVFD to submit reports and register with FEMA and the National Fire Association.

On February 16, 2022, PCSO dispatch was informed that although the LOC remained in place, such that SFVFD would continue "to have radio channels/talkgroups programed on their radios," dispatch would no longer provide SFVFD with courtesy calls notifying it of any fires in its coverage area. Accordingly, dispatch stopped providing SFVFD with courtesy calls, but SFVFD continued to have access to the radios, pursuant to the LOC, which remained effective. Lt. Teeple attempted to meet with Vincent to inform him of the decision to discontinue courtesy calls, but was unable to do so. Lt. Teeple did, however, tell Vincent "there was a letter coming from the county and they were no longer supporting [SFVFD] with calls." In subsequent conversations with DCA Jim Frisk and PCSO Chief Deputy Thomas preceding the fire at issue, Vincent learned of PCSO's concerns regarding SFVFD and learned that "the decision had been made to no longer contact [SFVFD] via 911."

In 2019, Marilesa Hetzel purchased property in Cactus Forest. The Hetzels allowed Michael Coulston to set up a marijuana greenhouse on their property. Coulston stayed in a motor home on the property and paid the Hetzels a monthly sum, along with a portion of the proceeds of his marijuana sales. In April 2022, after they failed to pay their electric bill, the Hetzels' electricity service was terminated. The Hetzels began using flashlights and candles to heat and light their home. The Hetzels, who could not purchase homeowners' insurance or fire insurance for the property, were aware they needed to be careful when using candles and other light sources in the property.

At about six o'clock on the evening of April 18, 2022, Frank lit a candle for Marilesa

as she was going to sleep. Leaving the candle on a bedside table near a curtained window, Frank went outside to work on something. At approximately 11:30 p.m., Frank heard Marilesa screaming for him from inside the house, and discovered that the house was on fire. When Frank ran into the bedroom, the curtains and entire front wall were on fire. Unable to extinguish the fire with water, due to the lack of water pressure and electricity, Frank attempted to extinguish the fire with Coulston's fire extinguisher, but was unable to do so. At 12:52 a.m., Coulston called 911 to report the fire. The call was made more than six hours after Ms. Hetzel went to bed, and 43 minutes after Frank learned of the fire. Approximately twenty minutes after the call came through, a Florence police officer and PCSO deputies arrived at the scene in response to the call. By that point, half the house was on fire. Less than a minute later and a mere 14 minutes after the fire was first reported, fire was coming out of the house, which was fully engulfed by the flames.

Although PCSO contacted several fire departments to see if they would respond to the scene, all the departments declined. Aware of the risks presented by ammunition going off inside the house, and a large propane tank located a mere 20 feet from the house, PCSO officers worked to evacuate the premises and help get animals off the property. At 2:45 a.m., more than an hour after the fire was reported, the Hetzels' neighbors, arrived with 700 gallons of water to help put out the fire. Within minutes, after confirming the Hetzels' consent to allow the neighbors onto their property, the deputies allowed the truck to enter the premises. The neighbors unsuccessfully attempted to put out the fire in the property's shop area, as the fire had already engulfed the home. By 4:21 a.m., the fire had died down. Neither of the Hetzels were aware of or heard of SFVFD prior to the night of the fire. Plaintiffs brought suit against the County and its officials claiming constitutional violations and gross negligence with respect to Defendants' decision to terminate courtesy calls to SFVFD, which caused their home to be destroyed by fire.

**LEGAL STANDARD**

Summary judgment is granted if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as

1  to any material fact and that the moving party is entitled to judgment as a matter of law."
2  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The
3  moving party bears the initial responsibility of presenting the basis for its motion and
4  identifying those portions of the record that it believes demonstrates the absence of a
5  genuine issue of material fact. *Celotex*, 477 U.S. at 323. The non-moving party must then
6  point to specific facts establishing there is a genuine issue of material fact for trial. *Id.*

7  At summary judgment, the Court considers only admissible evidence. *See* Fed. R.
8  Civ. P. 56(c)(1)(B). When considering a motion for summary judgment, a court should
9  not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to
10 be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty*
11 *Lobby, Inc.*, 477 U.S. 242, 255 (1986). A genuine issue of material fact exists "if the
12 [admissible] evidence is such that a reasonable jury could return a verdict for the non-
13 moving party." *Id.* at 248. In ruling on the motion for summary judgment, the Court will
14 construe the evidence in the light most favorable to the non-moving party. *Barlow v.*
15 *Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991).

## ANALYSIS

Defendants move for summary judgment on all five of Plaintiff's claims. For the reasons that follow, the Court grants summary judgment on all counts.

### I. Non-Jural Entities

Defendants assert the Sheriff's Office and the County Attorney's Office are non-jural entities and thus lack the capacity to be sued. Plaintiffs did not dispute this assertion, likely because it is evidently correct.

"[A] governmental entity may be sued only if the legislature has so provided" because it has "no inherent power and possess[es] only those powers and duties delegated to them by their enabling statutes." *Braillard v. Maricopa Cnty.*, 232 P.3d 1263, 1269 (Ariz. Ct. App. 2010); *see also McKee v. State*, 388 P.3d 14, 21 (Ariz. Ct. App. 2016); *Kelly v. Pima Cnty. Justice Court*, 2010 WL 2605804, *2 (D. Ariz. Apr. 23, 2010). Although the legislature has established a county's capacity to sue or be sued, it has not

given specific statutory authorization for a sheriff's office or county attorney's office to be sued. A.R.S. § 11-201(A)(1). Thus, PCSO is a non-jural entity and as such, it cannot be sued in its own name. *See Braillard*, 232 P.3d at 1269 (dismissing claims against Maricopa County Sheriff's Office as a non-jural entity); *United States v. Maricopa Cnty., Ariz.*, 915 F. Supp. 2d 1073, 1077 (D. Ariz. 2012) (dismissing Maricopa County Sheriff's Office from case because it was a non-jural entity); *Kelly*, 2010 WL 2605804, at *2 ("[A] county attorney's office is not a government entity which can be sued under § 1983"). Since PCSO and PCAO are non-jural entities, they are improper party defendants. Summary judgment is warranted on Plaintiffs' claims against PSCO and PCAO.

## II.     Vicarious Liability

Defendants argue the County and PCBOS are improper defendants in this action because they cannot be vicariously liable for actions undertaken by Sheriff Lamb and CA Volkmer in furtherance of their statutory duties, according to *Fridena v. Maricopa County*, 504 P.2d 58 (Ariz. Ct. App. 1972). Plaintiffs failed to respond. The Court agrees with Defendants.

The Arizona Court of Appeals in *Fridena* held that where a county has "no right of control over the Sheriff or his deputies" it is "not liable under the doctrine of Respondeat superior for the Sheriff's torts." *Fridena*, 504 P.2d at 61. "Generally, counties are not vicariously liable for the acts of elected officials whose duties are imposed by statute or the Arizona constitution." *Loredo v. Maricopa Cnty.*, 2023 WL 2181126, at *pp 6 (Ariz. Ct. App. Feb. 23, 2023) (holding county cannot be vicariously liable for the tortious conduct of an elected sheriff's deputies taking on duties imposed by law). Similarly, the Arizona Court of Appeals recently held that Ariz. Rev. Stat. § 11-251(1), which grants a county board of supervisors the authority to "supervise the official conduct of all county officers," is not a grant of plenary power, but rather applies only to the limited context of supervising the fiscal activities of those county officers who are "charged with assessing, collecting, safekeeping, managing or disbursing the public revenues." *Sanchez v. Maricopa Cnty.*, 541 P.3d 566, 569 (Ariz. Ct. App. 2023).

1 Defendants contend that under Ariz. Rev. Stat. § 11-441, the sheriff, and by
2 extension his deputies, has statutory duties to "preserve the peace," and prevent and
3 suppress all breaches of the peace. Ariz. Rev. Stat. § 11-441(A)(1), (3); § 38-462(A). They
4 argue Sheriff Lamb's decision to terminate courtesy calls to a volunteer firefighting group
5 that citizens had complained about was undertaken in furtherance of these statutory duties.
6 The Court agrees that neither the County nor PCBOS had any legal right of control over
7 Sheriff Lamb's actions or the actions of any unnamed deputies or dispatchers. *See Loredo*,
8 2023 WL 2181126; *Fridena*, 504 P.2d at 60-62; *see also Gabaldon v. Cnty. of Maricopa*,
9 2022 WL 306974, at *3 (D. Ariz. Feb. 2, 2022) ("Several federal courts in this district have
10 found *Fridena* bars [Arizona] state-law claims against the County based on respondeat
11 superior for torts allegedly committed by the employees of the Sheriff's Office . . . . This
12 Court will follow suit."); *Norton v. Arpaio*, 2015 WL 13759956, at *6 (D. Ariz. Nov. 20,
13 2015) (holding under *Fridena* all state-law claims against Maricopa County are dismissed);
14 *Kloberdanz v. Arpaio*, 2014 WL 309078, at *5 (D. Ariz. Jan. 28, 2014) (same); *Nevels v.*
15 *Maricopa Cty.*, 2012 WL 1623217, at *4 (D. Ariz. May 9, 2012) (same).

16 Likewise, Defendants contend the county attorney is also an elected official with
17 duties imposed by the legislature. *See* Ariz. Rev. Stat. § 11-532. The county attorney, and
18 by extension his deputies, has a statutory duty to, "[w]hen required, give a written opinion
19 to county officers on matters relating to the duties of their offices." Ariz. Rev. Stat. § 11-
20 532(A)(7). That is precisely what occurred here. A lieutenant within PCSO engaging in
21 his statutory duties sought an opinion from CA Volkmer related to the authorization of
22 terminating courtesy calls to SFVFD in light of citizen complaints and a lack of a formal
23 agreement with the County. Again, neither the County nor PCBOS had any right of control
24 over CA Volkmer or his deputies in their provision of a written opinion addressing the
25 provision of courtesy calls to SFVFD. As a result, the County and PCBOS cannot be held
26 vicariously liable for the actions of CA Volkmer or his deputies. Accordingly, under
27 *Fridena*, summary judgment is proper in favor of both the County and PCBOS.
28 / / /

### III. Notice of Claim

Defendants assert Plaintiffs failed to serve notices of claim on CA Volkmer, Sheriff Lamb, the unnamed PCSO deputies, and the 911 dispatchers. While a genuine dispute remains regarding the propriety of service on CA Volkmer and Sheriff Lamb, it is undisputed that Plaintiffs failed to serve notices of claim on any PCSO deputies or 911 dispatchers.

Arizona law requires claimants to serve a notice of claim on a public entity or public employee before any state law claims can be brought against them. Ariz. Rev. Stat. § 12-821.01. The notice of claim statute, however, does not apply to § 1983 claims. *Morgan v. City of Phoenix*, 785 P.2d 101, 104 (Ariz. Ct. App. 1989). Under Arizona law, strict compliance with § 12-821.01 is mandatory and essential. *Falcon ex rel. Sandoval v. Maricopa Cnty.*, 213 Ariz. 525, 144 P.3d 1254, 1256 (Ariz. Ct. App. 2006) ("Actual notice and substantial compliance do not excuse failure to comply with the statutory requirements of ... § 12-821.01(A)."). An assertion that the plaintiff has not complied with the notice-of-claim statute is an affirmative defense. *Lee v. State*, 242 P.3d 175, 178 (Ariz. Ct. App. 2010). The defendant thus bears the burden of proving that the plaintiff failed to comply. *See Pfeil v. Smith*, 900 P.2d 12, 14 (Ariz. Ct. App. 1995) ("[i]n a civil action ... the defendant has the burden of proving an affirmative defense").

CA Volkmer and Sheriff Lamb argue Plaintiffs failed to serve notices of claim on them because they aver Julie Clark, the Assistant to the Clerk of the PCBOS, who accepted service on September 9, 2022 was not authorized to accept service of process on either of their behalf. (DSOF, Exs. W, X ¶¶ 5-6). However, the proofs of service offered by Plaintiffs indicate that on September 12, 2022, Chris Keller, a deputy county attorney at PCAO accepted service of the notice of claim. (PSOF, Ex. 76 at 2). Also on that day, Lisa Navarrette, an administrative specialist at the PCSO accepted service of a notice of claim. (*Id.* at 3). Whether those two individuals were authorized to accept service on behalf of CA Volkmer and Sheriff Lamb, respectively, is subject to genuine dispute. However, because Plaintiffs failed to present evidence that any 911 dispatchers or PCSO deputies

were served with a notice of claim, summary judgment on the gross negligence claims as to both categories of unnamed defendants is warranted.

### IV. Section 1983 Fourteenth Amendment Claims

In their Complaint, Plaintiffs assert claims under 42 U.S.C. § 1983 pursuant to Defendants' alleged violations of the "Equal Protection Clause of the Fourteenth Amendment and Title VI of the Civil Rights Act of 1964." (Compl. at 2; *see* ¶¶ 67-68). Plaintiffs failed to plead allegations to support a Title VI claim, and the parties failed to address this claim on summary judgment. While Plaintiffs have forfeited this claim at summary judgment, the Court will exercise discretion and analyze the claim on its merits, but the Court finds that it is without merit.

And Plaintiffs attempted to introduce a new theory of liability on summary judgment based on the Fourteenth Amendment Due Process Clause. (Resp. at 4-11). Nowhere in the Complaint do Plaintiffs allege Due Process claims. It is axiomatic that Plaintiffs cannot obtain relief on claims not pled in the Complaint. *See* Fed. R. Civ. P. 8(a)(2); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292-93 (9th Cir. 2000) ("After having focused on [one theory] in their complaint and during discovery, the [plaintiff] cannot turn around and surprise the [defendant] at the summary judgment stage on the theory that an allegation of [one theory of relief] is sufficient to encompass a[nother] theory of liability."); *Summers v. Univ. of Nevada Las Vegas, a Div. of Univ. of Nevada Sys.*, 97 F.3d 1461 n.2 (9th Cir. 1996) (distinguishing between due process and equal protection claims, and affirming summary judgment on due process claims where the complaint "did not contain a due-process claim" and instead alleged "violations of the Fourteenth Amendment based on the Equal Protection Clause"). However, notwithstanding the impropriety of this claim, the Court will consider its merits, but again the Court finds it fails. Because of Plaintiffs' failure to establish a constitutional violation, their *Monell* claim cannot stand.

#### A. Equal Protection

"The Equal Protection Clause ensures that 'all persons similarly situated should be

treated alike.'" *Engquist v. Oregon Dep't of Agr.*, 478 F.3d 985, 992 (9th Cir. 2007), *aff'd sub nom.*, 553 U.S. 591 (2008). To assert a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must show the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class. *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001). However, where a plaintiff does not allege membership in a class or group, the Supreme Court has recognized a class-of-one equal protection claim. *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000). To prevail on a class-of-one claim, Plaintiffs must show "they have been '[1] intentionally [2] treated differently from others similarly situated and that [3] there is no rational basis for the difference in treatment.'" *SmileDirectClub, LLC v. Tippins*, 31 F.4th 1110, 1122 (9th Cir. 2022) (quoting *Olech*, 528 U.S. at 564). Plaintiffs "must show that the discriminatory treatment 'was intentionally directed just at [them], as opposed ... to being an accident or a random act.'" *N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008) (citation omitted). Importantly, "[t]he class-of-one doctrine does not apply to forms of state action that 'by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments.'" *Towery v. Brewer*, 672 F.3d 650, 660 (9th Cir. 2012) (quoting *Engquist*, 553 U.S. at 603).

In their Complaint, Plaintiffs allege they have a constitutional right to equal protection and CA Volkmer violated Plaintiffs' right to equal protection "when he advised Pinal County agencies to not follow county policy." (Compl. ¶¶ 67-68). At summary judgment, Plaintiffs fail to address their equal protection claim, let alone defend it. It is unclear to which protected class or group of people Plaintiffs contend they belong and how they believe they were discriminated against on that basis. Presuming Plaintiffs alleged a class-of-one equal protection claim—that they were the specific subjects of intentional, discriminatory treatment—the facts at issue here are a quintessential example of the discretionary decisionmaking exception, assuming Plaintiffs would even be able to show discrimination (which they have not).

First, Plaintiffs failed to establish Defendants intentionally treated Plaintiffs any differently than all similarly situated residents of the Cactus Forest area in April 2022 at the time of the fire. PCSO only began making courtesy calls to SFVFD in February 2021, and they were terminated in February 2022. The evidence shows the decision to not contact SFVFD in response to the fire in question was motivated by adherence to PCSO legal policy which, at the time, prohibited dispatchers from calling SFVFD. It was not motivated by any kind of animus against Plaintiffs, or even residents of the Cactus Forest area at large. Further, Defendants have demonstrated a rational and legal basis for the County's policy to suspend courtesy calls to SFVFD, that is, the group did not have a formal IGA or MOU with the County, and the County was investigating several citizen concerns regarding SFVFD's conduct in responding to fires. Defendants simply were required to engage in due diligence on SFVFD before continuing to place the public's trust and safety in the volunteer group—albeit arguably that due diligence should have been completed before allowing SFVFD access to County radio channels and providing some non-mandatory courtesy calls.

Second, and perhaps more notably, Sheriff Lamb's decision to stop providing SFVFD with courtesy calls was a discretionary decision within the scope of his duties made after PCSO received citizen complaints relating to SFVFD, sought legal counsel, and determined, in conjunction with counsel, that based on the information known to them at the time, SFVFD presented significant liability concerns. This discretionary decisionmaking is precisely the type of decisionmaking to which the class-of-one doctrine does not apply. *See Towery*, 672 F.3d at 660. Summary judgment is warranted on Plaintiffs' equal protection claim.

**B. Due Process**

As stated above, Plaintiffs due process claims were improperly introduced for the first time at summary judgment. For that reason, Plaintiffs' claim fails. Moreover, procedural error notwithstanding, the merits of Plaintiffs' constitutional claim do not otherwise salvage it.

Plaintiffs argue their claims are "rooted in the substantive component of the Due Process Clause of the Fourteenth Amendment." The Due Process Clause provides, "[n]o State shall…deprive any person of life, liberty, or property, without due process of law." U.S. CONST. AMEND. XIV, § 1. The Due Process Clause is a limitation on state action rather than a guarantee of minimum levels of state protections, so the government's failure to prevent acts of private parties is typically insufficient to establish liability under the Due Process Clause. *DeShaney v. Winnebago Cnty. Dept. of Soc. Servs.*, 489 U.S. 189, 195 (1989) ("The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security.") (holding local officials not liable under § 1983 on a failure-to-act theory for injuries inflicted on a child by his father). However, there are two exceptions to this rule: (1) the state-created danger exception, "when the state affirmatively places the plaintiff in danger by acting with deliberate indifference to known or obvious danger" and (2) the special relationship exception, "when a special relationship exists between the plaintiff and the state." *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971-72 (9th Cir. 2011). Plaintiffs contend the state-created danger exception applies.

The state-created danger exception applies if (1) affirmative conduct on the part of a state actor places a plaintiff in danger and (2) the officer acts with deliberate indifference to a known or obvious danger to the plaintiff. *Murguia v. Langdon*, 61 F.4th 1096, 1111 (9th Cir. 2023) (citing *Penilla v. City of Huntington Park*, 115 F.3d 707, 710 (9th Cir. 1997)). "In examining whether an officer affirmatively places an individual in danger, we do not look solely to the agency of the individual, nor do we rest our opinion on what options may or may not have been available to the individual. Instead, we examine whether the officers left the person in a situation that was more dangerous than the one in which they found him." *Id.* (quoting *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir. 2000)). Further, deliberate indifference requires "a culpable mental state" and the defendant must "actually intend" to expose the plaintiff to risk without regard to the consequences. *Id.* (quoting *Herrera v. L.A. Unified Sch. Dist.*, 18 F.4th 1156, 1161 (9th Cir. 2021)).

Various circuit courts have consistently rejected due process claims against governmental entities for failure to provide emergency services when the government did not create the emergency. *See Archie v. City of Racine*, 847 F.2d 1211, 1220-23 (7th Cir. 1988) (holding fire department dispatcher who failed to send a rescue squad did not violate plaintiff's constitutional rights when the government did not cause plaintiff's diseases or otherwise propel her into danger, nor take her into custody, nor hinder her from seeking other sources of aid); *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992) (holding sheriff did not violate due process by ordering city police squad specially trained in handling hostage situations away from scene and replacing them with county personnel and stating "[t]he due process clause is not implicated by a negligent act of an official which causes unintended loss of or injury to life, liberty, or property … The focus is on the Fourteenth Amendment's curb of deliberate abuses of governmental power."); *Anderson for Anderson v. City of Minneapolis*, 934 F.3d 876, 881 (8th Cir. 2019) (denying due process claim against the government when emergency medical personnel failed to follow guidelines in prematurely declaring decedent's death and thereby stifling possible aid).

Plaintiffs argue Sheriff Lamb's decision to terminate courtesy calls to SFVFD placed them in danger. But neither Sheriff Lamb nor any other Defendant caused the fire. Defendants did not place Plaintiffs in a more dangerous situation than the one in which they found them. While it may have been foreseeable to Sheriff Lamb and other county officials that terminating courtesy calls to SFVFD might lead to fewer firefighting resources, Defendants did not act with intent to harm Plaintiffs. The evidence shows Sheriff Lamb and county officials made this decision in response to legitimate concerns regarding SFVFD's operations. The decision was ultimately borne out of promoting public safety, not of depriving Pinal County residents, and in particular the Plaintiffs, with emergency fire services. Whether or not Defendants were negligent in their actions has no bearing on the constitutionality of those actions. Summary judgment is thus warranted on Plaintiffs' § 1983 claim in favor of all Defendants.[2]

---

[2] Though not raised, it appears Plaintiffs do not have standing to raise these constitutional challenges. All communications and activities regarding firefighting in the Cactus Forest

- 15 -

### C. *Monell* Liability

"A government entity may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). To establish a *Monell* claim, "a plaintiff must prove "(1) that [the plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Id.* (citing *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)).

A *Monell* claim is "contingent on a violation of constitutional rights" and Plaintiffs are thus required to show an underlying constitutional violation. *Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020). Because Plaintiffs have failed to establish a constitutional violation as discussed *supra*, the Court grants summary judgment on Plaintiffs' *Monell* claim. *See Sabbe v. Washington Cnty. Bd. of Commissioners*, 537 F. Supp. 3d 1205, 1230 (D. Or. 2021), *aff'd*, 84 F.4th 807 (9th Cir. 2023) (dismissing *Monell* claim as a matter of law where no constitutional violation occurred).

### V. Gross Negligence

A negligence claim requires proof of four elements: "(1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Gipson v. Kasey*, 150 P.3d 228, 230 (Ariz. 2007). A gross negligence claim additionally requires a showing of "[g]ross, willful, or wanton conduct." *Armenta v. City of Casa Grande*, 71 P.3d 359, 364 (Ariz. Ct. App. 2003). "Gross negligence is highly potent, and when it is present it fairly proclaims itself in no uncertain terms. It is in the air, so to speak. It is flagrant and evinces a lawless and destructive

---

area occurred with SFVFD—in particular, Vincent—not Plaintiffs. *Allen v. Wright*, 468 U.S. 737, 752 (1984), *abrogated on other grounds by Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014).

spirit." *Merritt v. Arizona*, 425 F. Supp. 3d 1201, 1231–32 (D. Ariz. 2019) (quotation omitted). "A court may, at the summary judgment stage, resolve gross negligence in the defendant's favor, as a matter of law, 'if the plaintiff fails to produce evidence that is more than slight and that does not border on conjecture such that a reasonable trier of fact could find gross negligence.'" *Mehlschau v. Costco Wholesale Corp.*, 634 F. Supp. 3d 658, 662 (D. Ariz. 2022) (quoting *Armenta*, 71 P.3d at 365).

The remaining Defendants for purposes of the gross negligence claim are Sheriff Lamb and CA Volkmer. Sheriff Lamb cannot be held liable pursuant to Ariz. Rev. Stat. § 38-446, which states that "no public officer or employee is personally liable for acts done in his official capacity in good faith reliance on … written opinions of a county attorney of the county[.]" Ariz. Rev. Stat. § 38-446. The undisputed admissible evidence shows that Sheriff Lamb made the decision to terminate courtesy calls to SFVFD in reliance on a written opinion from DCA Jim Heard stating that SFVFD did not appear to "have any authority to make anybody to anything." This was based on DCA Heard's discovery that SFVFD (1) did not have a letter of agreement with the State Fire Marshal or the Arizona Department of Fire and Forestry; (2) likely lacked formal firefighting training and had no fire protection authority outside the boundaries of its own property; (3) was not affiliated with the Town of Florence Fire Department; and (4) was operating as a private company. Relying on these recommendations, on February 16, 2022, PCSO officials directed others within PCSO to "cease all services to [SFVFD] immediately other than what's listed on the LOC and contact will be made to advise [SFVFD] of this[.]" Because PCSO officials specifically sought out advice from PCAO deputies, and relied on this advice, Sheriff Lamb cannot be held liable for gross negligence.

Thus, the Court turns to the gross negligence claim against CA Volkmer. Plaintiffs essentially assert CA Volkmer was grossly negligent in rendering an opinion that PCSO had authority to terminate courtesy calls to SFVFD. Viewing the facts in the light most favorable to Plaintiffs, Plaintiffs have failed to present evidence sufficient to show CA Volkmer engaged in "gross, willful, or wanton" conduct when providing legal advice. In

his deposition, CA Volkmer testified he opined to PCSO that no authority prevented PCSO from terminating courtesy calls from SFVFD because (1) the County was under no statutory duty to make those calls, (2) SFVFD did not have a MOU or IGA with the County, and (3) the LOC did not impose an obligation on the County to make courtesy calls. CA Volkmer further testified that all other fire agencies that get dispatched from PCSO have a formal agreement, such as an MOU or IGA, which "clearly defines what the expectations are from both parties, and it also includes the compensation." Because SFVFD lacked an agreement with the County, formal or otherwise, that outlined expectations with respect to terminating courtesy calls, CA Volkmer conclusions cannot be held grossly negligent as a matter of law. Summary judgment is therefore warranted on this claim.

## CONCLUSION

PCSO and PCAO are non-jural entities and are thus improper defendants. Similarly, the County and the PCBOS cannot be held vicariously liable for actions of elected officials such as Sheriff Lamb and CA Volkmer and their deputies because their duties are proscribed by Arizona statutes. Further, PCSO deputies and 911 dispatchers cannot be held liable because it is undisputed Plaintiffs failed to serve notices of claim on them before bringing this action. Plaintiffs' have failed to establish a constitutional violation sufficient to support a § 1983 claim under the Equal Protection Clause, the Due Process Clause, and *Monell*. Similarly, Plaintiffs' gross negligence claim against Sheriff Lamb fails because he relied on a written opinion from the County Attorney's Office in deciding to terminate courtesy calls to SFVFD. Likewise, the gross negligence claim against CA Volkmer fails because Plaintiffs did not provide evidence sufficient to show that the basis of his advice was "gross, willful, or wanton" when (1) the County was under no statutory duty to make those calls, (2) SFVFD did not have a MOU or IGA with the County, and (3) the LOC did not impose an obligation on the County to make courtesy calls.

/ / /

/ / /

/ / /

Accordingly,

**IT IS ORDERED** Defendants' Motion for Summary Judgment (Doc. 62) is **GRANTED** on all claims. Plaintiffs' Complaint is dismissed in its entirety with prejudice. The Clerk of Court is directed to enter judgment in favor of Defendants against Plaintiffs and close this case.

Dated this 5th day of March, 2025.

Honorable Roslyn O. Silver
Senior United States District Judge